IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| TRACY EDWARD JOHNSON, | : | PRISONER CIVIL RIGHTS |
|    Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | |
| | : | |
| JUD SMITH, Sheriff, Barrow | : | CIVIL ACTION NO. |
| County, Georgia, | : | 2:10-CV-236-RWS |
|    Defendant. | : | |

**<u>ORDER</u>**

Plaintiff, *pro se*, is confined in the Barrow County Detention Center in Winder, Georgia (the "Jail"). He has been granted leave to proceed *in forma pauperis* in this case, which is before the Court for a frivolity review under 28 U.S.C. § 1915A.

**I.   The Frivolity Review Standard**

A federal court is required to conduct an initial screening of a prisoner complaint to determine whether the action: (1) is frivolous or malicious or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A claim is frivolous, and must be dismissed, when it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008). A district court also may dismiss a complaint if the facts as pled do not state a claim for relief that is plausible on its face.

AO 72A
(Rev.8/82)

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). If a plaintiff cannot satisfy these requirements, or fails to provide factual allegations in support of his claim, the complaint is subject to dismissal. *Id.* at 737-38.

## II.  Plaintiff's Claims[1]

In the "Parties" section of his complaint, Plaintiff named only the Sheriff of Barrow County as a defendant to this action, but he named two Jail officers in the "Statement of Claim" section. The Court will direct the Clerk to add those two officers as defendants in this case. Liberally construing his complaint, Plaintiff asserts four claims in this § 1983 action.

First, Plaintiff claims that Jail officials are being deliberately indifferent to his dental needs. Plaintiff claims he has been denied proper dental care and suggests that

---

[1] The facts described here are taken from Plaintiff's complaint [1] and presumed true for purposes of the frivolity review.

2

he needs to have a tooth pulled. He says the tooth is causing him pain and that "the dentist" was belligerent with him and told him he had no right to have his tooth pulled because he was in jail. Plaintiff did not identify the dentist and provided no further details about his dental issues.

Second, Plaintiff complains about the Jail's new policies that: (1) limit inmates to the use of postcards for outgoing general mail; and (2) prohibit inmates from sealing envelopes containing correspondence to their attorneys. Plaintiff states that the jail in neighboring Hall County recently canceled its "postcard only" policy for general mail.

Third, Plaintiff alleges that Officers Westfall and C. Boyd retaliated against him for complaining about the denial of proper dental care and the mail policies. Specifically, he claims that those two officers entered his cell on August 13, 2010 and confiscated his "legal work" and correspondence regarding his legal claims. He further alleges that Officer Westfall assaulted him on that occasion by pinning him against his cell wall, putting a taser to his face, and threatening to put him in a "strip cell" and to "light [his] ass up" if he did not stop sending information about the Jail. Plaintiff wrote Sheriff Smith many letters about the August 13 incident and requested that charges be brought against Officer Westfall, but received no response.

3

Finally, Plaintiff alleges a claim of excessive force regarding Officer Westfall's assault on August 13. Plaintiff does not allege any injury resulting from the assault. Plaintiff is in fear of further retaliation.

As for relief, Plaintiff seeks "compensation for filing fees" and an investigation into the Jail. He also seeks injunctive relief regarding the dental care he needs and the Jail's outgoing mail policies. He does not appear to seek damages.

### III. Analysis

It is unclear whether Plaintiff sues Defendant Smith, the Sheriff of Barrow County, in his official or individual capacity, or both. A suit against a government official in his official capacity is tantamount to suing the governmental entity. *See Jones v. Cannon*, 174 F.3d 1271, 1293 n.15 (11th Cir. 1999). Claims against supervisory officials in their official capacity are cognizable under § 1983 if the challenged conduct results from an official policy or custom or if the official is a final policymaker regarding the challenged conduct. *Scala v. City of Winter Park*, 116 F.3d 1396, 1399-1401 (11th Cir. 1997). In their individual capacity, supervisory officials like Defendant Smith are not vicariously liable under § 1983 for the misconduct of their subordinates, but instead are liable only if they "personally participate in the alleged unconstitutional conduct or . . . there is a causal connection between the actions

4

of [the] supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *see also Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) ("[A] complaint will be held defective . . . if [it] fails to connect the defendant with the alleged wrong.").

Plaintiff has not alleged that Defendant Smith personally participated in the allegedly unlawful conduct and has not otherwise stated a viable claim against him in his individual capacity. As discussed below, however, he has fairly alleged that the Jail has unconstitutional policies regarding outgoing mail, and the Court cannot say at the frivolity review stage that Defendant Smith is not the final policymaker regarding those policies.[2]

---

[2] The Court need not address whether Defendant Smith acts as an arm of the State regarding the Jail's outgoing mail policies and therefore is entitled to Eleventh Amendment immunity because Plaintiff appears to seek only prospective injunctive relief regarding those policies. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment does not bar suit against state officials for prospective relief from continuing violations of federal law); *see also Manders v. Lee*, 338 F.3d 1304, 1324 n.45 (11th Cir. 2003) (en banc) ("[W]e narrowly decide only that Georgia sheriffs in their official capacity act for the State in establishing force policy in the county jail and in training and disciplining their deputies in that regard.").

5

### A.     Deliberate Indifference to a Serious Medical Need

Jail officials who deny or delay access to medical care may violate the Constitution.[3] *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state a claim of such a violation, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). A "serious medical need" is one that: (1) has been diagnosed by a physician as mandating treatment; (2) is so obvious that even a lay person would easily recognize the necessity for a doctor's attention; or (3) if treatment for it is delayed, the condition worsens. *Id.* at 1307. Moreover, the medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotations omitted).

Plaintiff's allegations are insufficient to show that he had a "serious medical need," as that term is defined in the constitutional context. "In certain circumstances,

---

[3] Because Plaintiff appears to be a pre-trial detainee, his deliberate indifference and excessive force claims are analyzed under the Fourteenth Amendment's Due Process Clause. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). The analysis is the same as that for claims under the Eighth Amendment. *Id.*

6

the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm." *Id.* at 1243-44. Plaintiff alleges only that he has tooth pain and suggests that he wants one of his teeth pulled. He does not allege that a dentist or other medical personnel has diagnosed any dental problem posing a substantial risk of serious harm or that his dental issues have worsened because of delayed care, although his allegations do not foreclose those possibilities.

Nevertheless, the Court finds that a more carefully drafted complaint might state a claim of deliberate indifference to a serious medical need. "Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quotation and alteration omitted). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's deliberate indifference claim regarding his dental care.

### B. Excessive Force

To state a claim of excessive force in violation of the Constitution, an inmate must allege that he suffered an injury resulting from a jail official's "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *see Brown v.*

7

*Acting Dir. of Metro Dade Corr.*, 360 F. App'x 48, 53 (11th Cir. 2010) (applying Eighth Amendment standards to pretrial detainee's excessive force claim). "The core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 1-2. Factors considered in this inquiry include the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the official, and any efforts made to temper the severity of a forceful response. *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).

Like his deliberate indifference claim, Plaintiff's factual allegations regarding Officer Westfall's physical "assault" of Plaintiff in his cell on August 13, 2010 are sparse. Plaintiff suggests that Officer Westfall pinned him against the wall without provocation or justification, but he provides few details regarding the context of the incident. Plaintiff also does not allege that he suffered any injury as a result of the incident. While the core inquiry in determining whether a prisoner has stated a viable excessive force claim is the quantum of force used, not the resulting injury, "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010) (internal quotations omitted). Because a more carefully drafted

8

complaint might state a viable excessive force claim regarding the August 13 incident, the Court **DISMISSES WITHOUT PREJUDICE** that claim. *See Bryant*, 252 F.3d at 1163.

### C.   Retaliation

Jail officials cannot retaliate against inmates for exercising their First Amendment speech right to petition for the redress of grievances. *Farrow*, 320 F.3d at 1248; *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). To prove retaliation, an inmate must show that (1) he engaged in constitutionally protected speech; (2) jail officials caused him to suffer an adverse action that would deter a person of ordinary firmness from engaging in such speech; and (3) the protected speech and adverse action were causally connected. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff's allegations state a viable retaliation claim against Officers Westfall and C. Boyd. Plaintiff alleges that after complaining about the Jail's failure to provide him proper dental care and the Jail's outgoing mail policies, Officers Westfall and C. Boyd confiscated Plaintiff's legal work pertaining to those issues. He further alleges that on the same occasion Officer Westfall threatened him with physical harm if he continued complaining. It is plausible that those actions would deter a reasonable

9

person from exercising his right to seek redress from allegedly unlawful Jail policies, and Plaintiff clearly alleges a causal connection between his complaints and the actions of Officers Westfall and C. Boyd. Thus, Plaintiff's retaliation claim against those officers will be allowed to proceed.

### D. First Amendment Claims Regarding Outgoing Mail

Jail inmates have a right under the First Amendment to have their attorney mail, both incoming and outgoing, opened only in their presence. *Al-Amin v. Smith*, 511 F.3d 1317, 1333-34 (11th Cir. 2008) (holding that opening attorney mail outside inmate's presence violates inmate's free speech rights even if there is no resulting injury). Plaintiff alleges that Jail policy requires him to leave mail he wants to send to his attorney open – he is not allowed to seal the envelope – when he gives it to Jail officials. There is no meaningful difference in Jail officials requiring Plaintiff to leave his outgoing attorney mail open and Jail officials opening the mail themselves outside Plaintiff's presence. The potential chilling effect on the protected speech is the same. *See Al-Amin*, 511 F.3d at 1334. Thus, Plaintiff has stated a viable First Amendment claim regarding his attorney mail.

10

Plaintiff also has stated a viable claim regarding the Jail's policy that inmates use only postcards for general outgoing mail.[4] Jail officials may review and censor inmates' outgoing non-attorney mail if: (1) the practice furthers an important or substantial governmental interest unrelated to the suppression of expression; and (2) the limitation of First Amendment rights is no greater than necessary or essential to protection of the governmental interest. *Procunier v. Martinez*, 416 U.S. 396, 412-13 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).[5]  The Supreme Court recognized that the activity at issue in *Martinez* "– outgoing personal correspondence from prisoners – did not, by its very nature, pose a serious threat to prison order and security." *Thornburgh*, 490 U.S. at 411.

---

[4] According to Plaintiff's allegations, the post-card only policy does not apply to attorney mail, and it apparently does not apply to other legal mail because none of Plaintiff's filings with the Court in this case have been on postcards.

[5] *Thornburgh*, which involved only incoming mail, limited *Martinez* to cases involving outgoing prison mail and overruled *Martinez* to the extent it suggests a distinction between incoming mail from prisoners and incoming mail from non-prisoners. *Thornburgh*, 490 U.S. at 412-14.  Because Plaintiff's claim concerns only outgoing mail, *Martinez* applies. *See Koutknik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006) ("[C]ensorship of an inmate's outgoing mail still is scrutinized under the standard espoused in *Martinez*."); *Stow v. Grimaldi*, 993 F.2d 1002, 1003-05 (1st Cir. 1993) (applying *Martinez*'s two-prong test in case challenging prison policy prohibiting sealed outgoing correspondence to certain recipients).

Plaintiff has not alleged in his complaint – and may not know – what interest the Jail or Defendant Smith seek to further by limiting inmates to postcards for all outgoing general mail. Without such information, the Court cannot fully analyze Plaintiff's allegations under *Martinez*'s two-prong test, but his allegations state a plausible claim that the Jail's policy violates the test. It is plausible, if not likely, that the alleged postcard policy exists for security reasons. It also is plausible, however, that the policy exists to facilitate improper censorship of outgoing mail. In either case, Plaintiff may argue that Jail officials could address their concerns by the less restrictive measure of requiring that general outgoing mail be placed in unsealed envelopes – as they allegedly do for attorney mail – instead of altogether limiting the type and size of the medium used for such mail. *See Thornburgh*, 490 U.S. at 412 (observing that "the implications for security are far more predictable" with outgoing mail). In short, the Court finds Plaintiff's allegations regarding this policy sufficient for the claim to proceed beyond the frivolity review stage.

## IV. Conclusion

For the foregoing reasons, the Court **DIRECTS** the Clerk to add Officer Westfall and Officer C. Boyd as defendants to this action. Plaintiff's (1) retaliation claim against Defendants Officer Westfall and C. Boyd in their individual capacities;

and (2) First Amendment claims regarding his outgoing attorney and non-attorney mail against Defendant Sheriff Smith in his official capacity are **ALLOWED TO PROCEED** like any other civil action.  Plaintiff's claims of excessive force and deliberate indifference to a serious medical need are **DISMISSED WITHOUT PREJUDICE** to his right to amend his complaint.

The Clerk is **DIRECTED** to send Plaintiff a USM 285 form and summons for each of the three defendants against whom the Court is allowing this action to proceed. Plaintiff is **DIRECTED** to complete a USM 285 form and summons for each defendant and to return them to the Clerk of Court within twenty (20) days from the date this Order is entered.  The Court warns Plaintiff that failure to comply in a timely manner could result in the dismissal of this action.  The Clerk is **DIRECTED** to resubmit this action to the undersigned if Plaintiff fails to comply.

Upon receipt of the forms, the Clerk is **DIRECTED** to prepare a service waiver package for each of the three defendants.  Each service waiver package must include two (2) Notices of Lawsuit and Request for Waiver of Service of Summons (prepared by the Clerk), two (2) Waiver of Service of Summons forms (prepared by the Clerk), an envelope addressed to the Clerk of Court with adequate first-class postage for the

13

defendants' use in returning the waiver form, one (1) copy of the complaint, and one (1) copy of this Order. The Clerk shall retain the USM 285 form and summons.

Upon completion of the service waiver packages, the Clerk is **DIRECTED** to complete the lower portion of the Notice of Lawsuit and Request for Waiver form and to mail the service waiver packages to the three defendants. The defendants have a duty to avoid unnecessary costs of serving the summons. If a defendant fails to comply with the request for waiver of service, that defendant must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

In the event a defendant does not return an executed Waiver of Service form to the Clerk of Court within thirty-five (35) days following the date the service waiver package was mailed, the Clerk is **DIRECTED** to prepare and transmit to the U.S. Marshal's Service a service package for that defendant. The service package must include the USM 285 form, the summons, and one (1) copy of the complaint. Upon receipt of the service package(s), the U.S. Marshal's Service is **DIRECTED** to personally serve that defendant. The executed waiver form or the completed USM 285 form shall be filed with the Clerk.

14

Plaintiff is **DIRECTED** to serve each of the three defendants or their counsel with a copy of every additional pleading or other document that he files with the Clerk of the Court.  Each pleading or other document filed with the Clerk shall include a certificate stating the date on which an accurate copy of that paper was mailed to defendants or their counsel.  The Court will disregard any submitted papers that have not been properly filed with the Clerk or that do not include a certificate of service.

Plaintiff is also **DIRECTED** to keep the Court and the three defendants advised of his current address at all times while this action is pending.  The Court admonishes Plaintiff that failure to do so may result in the dismissal of this action.

Finally, prisoner civil rights cases are automatically assigned to a zero-month discovery track.  If any party determines that discovery is required, that party must, within thirty days after the first appearance of a defendant, file a motion requesting a discovery period.

**SO ORDERED** this  1st  day of February, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

15